# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ADAM MONTJOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 2421 |
| | ) | |
| SERGEANT GALLARDO, et al., | ) | Hon. Marvin E. Aspen |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adam Montjoy, a pretrial detainee at Cook County Jail, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants, correctional staff at Cook County Jail, were deliberately indifferent to his safety and used excessive force when trying to break up an altercation between several detainees. Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' summary judgment motion in part and denies it in part.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Because Plaintiff is a pro se litigant, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. [Dkt. 73]. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir.2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir.2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56. 1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement of additional facts. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir.2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir.2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 513 (7th Cir.2013). In addition, district courts, in their discretion, may "choose[] to ignore and not consider the additional facts that a litigant has proposed" if the litigant failed to comply with Local Rule 56.1. *Cichon v. Coop. Plus, Inc.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995)).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir.2012).

Plaintiff responded to the motion for summary judgment with a memorandum in opposition to the motion and a response to certain of the Defendants' statement of material facts [Dkt. 80]. While Plaintiff failed to cite to specific references to the affidavits, parts of the record, or any other supporting materials in support of some of his opposition to Defendants' statement of material facts, he did properly cite to his deposition testimony and an attached affidavit in opposition to several statements. The Court has carefully reviewed the Defendants' statement of material facts, Plaintiff's response to those statements, Defendants' reply to Plaintiff's responses, and the supporting documentation provided by all parties. The relevant facts stated below are derived from reviewing the filings and the materials cited to support, or in objection to, the proposed statement of material facts.

In addition, Plaintiff's failure to fully comply with Local Rule 56.1 as to some of Defendants' statement of material facts does not result in an automatic grant of summary judgment in favor of Defendants. Instead, the Court still must evaluate all facts in the light most favorable to him, the non-moving party. *See* Fed. R. Civ, P. 56(e)(2); *Keeton*, 667 F.3d at 884. With these standards in mind, the Court turns to the relevant facts of this case.

**II. Relevant Facts**

Plaintiff Adam Montjoy was detained at Cook County Jail in Division 9, Tier 1C, on

September 12, 2012. (Defs.' 56.1 Stmt. [Dkt. 72] ¶¶ 2-4.) Division 9 is the maximum security division at Cook County Jail. (*Id.* ¶ 5.) This division houses violent offenders, offenders charged with violent crimes, and detainees with disciplinary issues within the jail. (*Id.*)

On September 12, 2012, Plaintiff was let out of his cell and allowed into the day room for a three-hour period beginning at approximately 6:00 p.m. (*Id.* ¶ 6.) At approximately 6:00 p.m. that evening, Plaintiff told Defendant Correctional Officer Phillips that "somebody told me that I was gonna be attacked by some detainees." (*Id.* ¶ 7.) Plaintiff told Officer Phillips that he needed to be moved so he would not get hurt. (*Id.*) At approximately 8:00 p.m. that same evening, Plaintiff told Officer Phillips and Defendant Correctional Officer Tedesco that he needed to be moved because he was going to be attacked. (*Id.*; Plaint.'s Dep. pgs. 106-07.) Officer Tedesco responded to Plaintiff, "Fight like a man, you know, stop being a pussy." (Plaint.'s Dep. pgs. 106-07.) Officer Phillips also told Plaintiff she was not going to call a sergeant for Plaintiff to speak to about the threat or be moved. (*Id.*) Plaintiff did not inform Officer Phillips or Officer Tedesco who was going to attack him, when the attack would occur or how the attack would occur. (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 8.) Plaintiff never informed the other Defendants, Sergeant Gallardo, Sergeant Ross, Correctional Officer Sable or Officer Meller that he had received a threat of a possible attack. (*Id.* ¶ 11.)

At approximately 8:00 p.m. that evening, Plaintiff placed a telephone call. (*Id.* ¶ 12.) At the time, there were approximately twenty detainees in the day room. (*Id.* ¶ 14.) While on the telephone, Plaintiff observed another detainee get punched by at least one other detainee. (*Id.* ¶ 13; Plaint.'s Resp. ¶ 13.) After punching the other detainee, the men advanced on Plaintiff and he began running to the "control bubble." (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 16.) At this time, Officer Phillips

4

and Officer Tedesco were the only officers present in the control bubble. (*Id.* ¶ 15.) A "10-10" call for all available officers to respond to the division was made. (*Id.*) A multi-person fight ensued within the day room, causing a high risk, dangerous situation involving detainees with weapons that threatened Plaintiff as well as the other detainees in the day room. (*Id.* ¶ 18.) When such an incident occurs, correctional staff are prohibited from entering the area until there are a sufficient number of officers present, and only after a video camera is present and a "go order" is given by a supervisor. (*Id.* ¶ 19.)

During the incident, Plaintiff and the other detainees were running around the day room. (*Id.* ¶ 23.) During the incident, Plaintiff was stabbed in the back and assaulted by approximately twelve other detainees. (*Id.* ¶¶ 22, 24-25; Plaint.'s Resp. ¶¶ 22, 24-25.) Plaintiff went to the control bubble and saw Sergeant Gallardo and Sergeant Ross inside the control bubble. (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 26.) Plaintiff also observed several other officers in the bubble. (Plaint.'s Dep. pgs. 69-70.) Sergeant Gallardo and Sergeant Ross just stood in the bubble, watching the melee, smiling at Plaintiff, as if it was a "stand-off." (*Id.*) While at the control bubble, Plaintiff was stabbed in the stomach by another detainee. (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 27.) Plaintiff continued to be attacked by other detainees at the control bubble. (*Id.*; Plaint.'s Resp. ¶ 27.)

The correctional staff entered the day room, spraying mace inside the tier. (Defs.' 56.1 Stmt. [Dkt. 72] ¶¶ 28-29, 31.) Plaintiff observed Sergeant Gallardo, Sergeant Ross, Officer Sable and Officer Meller carrying mace when they entered the day room. (Plaint.'s Dep. pgs. 81, 83.) Officer Meller sprayed mace in Plaintiff's direction after entering the day room. (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 30.) Plaintiff was sprayed with mace approximately 15 to 30 seconds after the attack stopped. (*Id.* ¶ 36; Plaint.'s Resp. ¶ 23.) Approximately 10 to 15 minutes elapsed from the start of

the incident and the time the correctional staff entered the day room. (*Id.* ¶ 38; Plaint.'s Dep. pg 74.)

The Cook County Department of Corrections (CCDOC) has an established grievance procedure that was available to all detainees in 2012. (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 42.) The grievance policy requires that detainees properly exhaust all administrative remedies prior to filing a related lawsuit. (*Id.* ¶ 43.) Filing an appal of a grievance response is required to exhaust a detainee's administrative remedies. (*Id.* ¶ 44.)

Plaintiff filed a grievance regarding the September 12, 2012, incident on September 28, 2012. (*Id.* ¶ 46.) Plaintiff received a response to this grievance on October 10, 2012. (*Id.* 48.) Plaintiff received a response to his appeal of this grievance on October 18, 2012, that his grievance was being forwarded to the Office of Professional Responsibility (OPR). (*Id.* ¶ 49; Plaint.'s Resp. ¶ 49.)

Plaintiff submitted a second grievance regarding the incident on October 24, 2012. (Defs.' 56.1 Stmt. [Dkt. 72] ¶ 47.) Plaintiff received a response to the second grievance on January 9, 2013. (*Id.* ¶ 51.) Plaintiff was informed that the grievance was sent to OPR for review. (*Id*.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as

to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

Defendants have moved for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies, that Plaintiff failed to demonstrate a violation of the Fourteenth Amendment as to all of his claims, and that they are entitled to qualified immunity.

**I. Exhaustion of Administrative Remedies**

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all prisoner/detainee suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. *See Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that a plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999).

A detainee must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). To exhaust remedies under § 1997e(a) a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before

7

a federal suit is initiated. *See Porter*, 534 U.S. at 524-25.

Defendants have not demonstrated that Plaintiff did not exhaust his administrative remedies regarding the September 12, 2012, incident. The undisputed facts show that Plaintiff filed a grievance regarding the incident on September 28, 2012. Plaintiff received a response to this grievance on October 10, 2012, and appealed that response. Plaintiff received a response to his appeal of this grievance on October 18, 2012, indicating that his grievance was being forwarded to the OPR. Defendants' argument that Plaintiff was required to wait for a response from the OPR before filing suit is meritless. The grievance procedure provides that a grievance be filed and an appeal be filed by the detainee if he is not satisfied with the response. Plaintiff took these steps. There is no procedure or policy that required Plaintiff to proceed farther on this grievance.

The cases cited by Defendants in support of their argument are readily distinguished. The plaintiffs in *Worthem v. Boyle*, 404 Fed. Appx. 45 (7th Cir. 2010) and *Crayton v. Graffeo*, No. 12 C 7128, 2014 WL 46453 (N.D. Ill. 2014) (Cole, J.), failed to timely appeal the responses to their grievances, not the response to the appeal of his grievance as in this case. Accordingly, summary judgment is denied based on Defendants' argument that Plaintiff failed to exhaust his administrative remedies.

## II. Merits of Plaintiff's Claims

### A. Failure to Protect Claim

Plaintiff sues Officer Tedesco and Officer Phillips for alleged violation of the Fourteenth Amendment based on their failure to protect him from being attacked by another detainee. (Amended Complaint [Dkt. 57], pgs. 20-21.)

Jail officials have a duty to protect pretrial detainees/inmates from violence by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1988); *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To succeed on a claim based on a defendant's failure to protect another inmate, a plaintiff must demonstrate that the defendant was deliberately indifferent to the fact that the plaintiff was in serious risk of being harmed. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011); *Grieveson*, 538 F.3d at 775; *Pinkston*, 440 F.3d at 889. Conduct by the defendant that is simply negligent or inadvertent is not actionable under Section 1983. Instead, the defendant must know of a substantial risk of serious harm and he must fail to take reasonable measures to prevent that harm from occurring. *See Pinkston*, 440 F.3d at 889; *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

Thus, a plaintiff must demonstrate that the defendants were deliberately indifferent to the fact that the plaintiff was at serious risk of being harmed. *See Grieveson*, 538 F.3d at 775; *Pinkston*, 440 F.3d at 889. The defendant must have known of a substantial risk of serious harm to the plaintiff and he must have failed to take reasonable measures to prevent that harm from occurring. *See Pinkston*, 440 F.3d at 889. Actual knowledge of impending harm may be inferred from circumstantial evidence. *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005).

Defendants argue that Plaintiff's general statement that he needed to be moved because he heard that he was going to be attacked was too general to be considered a "tangible" threat to his safety or well-being. However, Plaintiff told Officer Phillips and Officer Tedesco that he was in fear of being attacked and asked to be moved. Thus, Officer Phillips and Officer Tedesco were made aware of a possible threat to Plaintiff's well-being. Defendants attempt to fault Plaintiff for not providing more information and not knowing who was threatening him. Yet, Defendants did not

9

seek more information from Plaintiff. Instead, they told him they were not going to call a sergeant so Plaintiff could address the issue with a sergeant and Officer Tedesco responded that Plaintiff should "[f]ight like a man" and to stop "being a pussy." If no threat actually existed, they would not have advised Plaintiff to "fight like a man." Based on these facts, genuine issues of material exist as to whether the information provided to Officer Phillips and Officer Tedesco was sufficient to apprise them of a possible substantial risk to Plaintiff's safety and whether their response to Plaintiff demonstrates deliberate indifference to that threat.

### B. Failure To Intervene

Plaintiff sues Sergeant Gallardo and Sergeant Ross for alleged violation of the Fourteenth Amendment based on their failure to intervene when they were in the control bubble and saw Plaintiff being attacked. (Amended Complaint [Dkt. 57], pg. 21.)

Jail officials have a duty to protect pretrial detainees/inmates from violence by other prisoners. *See supra.* However, a prison official is not required to place himself at risk by breaking up a fight between inmates. *See Shields*, 664 F.3d at 181; *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). A lone prison guard or correctional officer is not required to take an unreasonable risk of attempting to break up a fight. *See Shields*, 664 F.3d at 181; *Guzman*, 495 F.3d at 858.

Defendants rely heavily on the Seventh Circuit's ruling in *Shields*, in which the court found that the correctional officers' 15 to 20 minute delay in arriving on the scene, while "most troubling," did not rise to deliberate indifference. *Shields*, 664 F.3d at 182. Here, Plaintiff stated that he believed it took 10 to 15 minutes before the correctional officers entered the tier to break up the fight. While that time frame is within the 15 to 20 minute time frame in *Shields*, the Court does not

read *Shields* as holding that any delay of up to 20 minutes does not rise to a constitutional violation. For example, in the present case, Plaintiff testified at his deposition that he observed several officers in the bubble that just stood there watching the melee, smiling at Plaintiff, as if it was a "stand-off." While the staff was not required to enter the day room and place themselves at risk of harm until the proper number of officers were present to control the situation, genuine issues of material fact exist as to when the appropriate number of officers were present and whether they intentionally delayed entry into the day room to take control of situation and stop Plaintiff from being attacked. Thus, summary judgment must be denied as to this claim.

### C. Excessive Force By Use of Pepper Spray

Lastly, Plaintiff sues Sergeant Gallardo, Sergeant Ross, Officer Meller, Officer Sable and Officer Tedesco for alleged violation for the Fourteenth Amendment based on their use of pepper spray when the situation was already under their control. (Amended Complaint [Dkt. 57], pgs. 21-22.)

The core requirement that a plaintiff must prove on an excessive force claim is that the correctional officer used force not "in a good-faith effort to maintain or restore disciple," but did so "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Factors that are used to determine wether a correctional officer's use of force was legitimate or malicious include: (1) the need for the use of force, (2) the relationship between the need for force and the force that was applied, (3) the threat reasonably perceived by the correctional officer, (4) any efforts to temper the severity of the force applied, and (5) the extent of the injuries suffered. *Hendrickson*, 589 F.3d at 890. However, even if the correctional officer's use of force served no good-faith disciplinary purpose, force that is *de*

*minimis* does not constitute a violation of the Eighth Amendment. *Hendrickson*, 589 F.3d at 890. Even so, a prisoner need not suffer a "serious injury" to raise an Eighth Amendment claim. *Hendrickson*, 589 F.3d at 890-91. Notably, "summary judgment is often inappropriate in excessive force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010), *citing Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009).

Here, Sergeant Gallardo, Sergeant Ross, Officer Meller, and Officer Sable, whom allegedly sprayed mace in the day room, ague that they used reasonable force because 12 to 20 detainees were fighting in the day room, detainees were running throughout the day room, and at least one detainee had a weapon. Defendants rely heavily on the videotape of their entry in support of their argument. The Court reviewed the videotape and it does show detainees running around the day room immediately prior to the officers' entry into the day room. It also shows that it appears that the situation was quickly taken under control. However, it does not show when any mace was sprayed and whether the mace was sprayed when the situation was already under control. Thus, genuine issues of material fact exist as to whether the officers' use of mace in the day room was necessary or constituted excessive force.

Sergeant Gallardo, who allegedly sprayed mace directly at Plaintiff, also argues that he was justified in spraying mace directly at Plaintiff because Plaintiff had a weapon (a garbage can or garbage can lid). However, Plaintiff disputes having any type of weapon when he was sprayed with mace and avers that he was laying on the ground when he was sprayed with mace by Sergeant Gallardo.

In light of the above disputed facts, genuine issues of material fact exist as to whether Defendants Sergeant Gallardo, Sergeant Ross, Officer Meller, and Officer Sable used excessive force when they sprayed mace in the day room and/or directly at Plaintiff. Accordingly, summary judgment is denied as to Plaintiff's excessive force claim against Sergeant Gallardo, Sergeant Ross, Officer Meller, and Officer Sable.

Plaintiff also alleged that Officer Tedesco used excessive force by spraying Plaintiff with mace in his amended complaint. However, it is undisputed that Plaintiff did not testify that he observed Officer Tedesco with mace and he does not argue in opposition to Officer Tedesco's argument that he did not spray mace in the day room. Accordingly, summary judgment is granted as to the excessive force claim against Officer Tedesco.

### III. Qualified Immunity

If a public official raises the defense of qualified immunity, the plaintiff bears the burden of showing: (1) whether he has asserted a violation of a constitutional right and (2) whether the applicable constitutional standards were clearly established at the time the alleged violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). A clearly established right is established if the plaintiff can demonstrate that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but is to say that in light of the pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 639-40.

Here, Plaintiff has asserted a violation of his constitutional rights based on the Defendants' conduct and genuine issues of material facts exist as to whether his constitutional rights were

violated by the Defendants. It was also clearly established that the correctional staff had a duty to protect Plaintiff from harm and use only the force that was needed under the circumstances. *See supra.* Accordingly, summary judgment on the basis of qualified immunity is also denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Dkt. 71] is granted in part and denied in part. The motion for summary judgment is granted as to Officer Tedesco only as to Plaintiff's excessive force claim against Officer Tedesco. The motion for summary judgment is denied as to all other claims and Defendants.

12/18/14

_____
Marvin E. Aspen
United States District Judge